UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MICHAEL DEAN CARAWAY,

        Petitioner,

v.                                    CASE NO. 05-CV-74817-DT
                                            HONORABLE MARIANNE O. BATTANI

ANDREW JACKSON,

        Respondent.

_____/

## OPINION AND ORDER DENYING HABEAS CORPUS PETITION

Petitioner Michael Dean Caraway has filed a *pro se* habeas corpus petition under 28

U.S.C. § 2254. The habeas petition challenges Petitioner's state conviction for delivery of more

than 650 grams of a substance containing cocaine. Petitioner alleges that (1) his conviction was

based on false testimony, (2) he was denied effective assistance of trial counsel, (3) the

prosecutor committed misconduct, (4) the trial court failed to ascertain on the record whether he

knowingly and intelligently waived his right to testify, (5) the jury instruction on reasonable

doubt was erroneous, and (6) the cumulative effect of errors deprived him of a fair trial. The

Court has concluded from a review of the record that the state court's adjudication of these

claims was objectively reasonable. Accordingly, the habeas petition will be denied.

## I. Background

Petitioner was charged in Calhoun County, Michigan, with delivery of over 650 grams of

cocaine and conspiracy to deliver over 650 grams of cocaine. The evidence adduced at trial

established that Petitioner and Paul Sinclair purchased half of a kilogram of cocaine from James

Cox. Two days later, on September 13, 2001, Sinclair delivered over a thousand grams of a

substance containing cocaine to undercover officer Raymond Durham in return for $22,600. Shortly after Sinclair completed the transaction and went on his way, he was stopped by a uniformed police officer and arrested by a narcotics surveillance team. The police learned about Petitioner's role in the delivery of cocaine from Sinclair. Petitioner was then arrested and interviewed by Detective Lieutenant Randall Pompey of the Michigan State Police. Petitioner admitted to Lieutenant Pompey that he and Sinclair had started a "dope" business, that they had bought half of a kilogram of cocaine from James Cox, and that they had used a hotel room to convert the half kilogram of cocaine into a whole kilogram.

The prosecution's theory was that Petitioner provided Paul Sinclair with a source for the cocaine and thereby aided and abetted Sinclair in delivering the cocaine to Officer Durham on September 13, 2001. Petitioner did not testify. He presented one witness, Paul Heise, who testified that he lived with Petitioner for three or four years and that Petitioner had been working at Kentucky Fried Chicken and did not have money to pay the rent. Defense counsel argued to the jury that there was no concrete evidence against Petitioner and that Sinclair was a successful drug dealer who did not need Petitioner's assistance with his drug business.

On the first day of trial, the trial court dismissed the conspiracy charge at the prosecutor's request, and, on June 28, 2002, the jury found Petitioner guilty of delivery of over 650 grams of cocaine. *See* Mich. Comp. Laws § 333.7401(2)(a)(i) (2001). The trial court sentenced Petitioner to imprisonment for a minimum of twenty years and a maximum term of life imprisonment. The Michigan Court of Appeals affirmed Petitioner's conviction, but remanded the case for re-sentencing because the sentence violated state law. *See People v. Caraway*, No. 244206 (Mich. Ct. App. Mar. 23, 2004) (unpublished opinion). The Michigan Supreme Court denied leave to

appeal because it was not persuaded to review the issues. *See People v. Caraway*, 471 Mich. 886; 688 N.W.2d 503 (2004) (table).

Petitioner filed his habeas corpus petition on December 20, 2005. His claims are:

I.      Petitioner was deprived of his constitutional right to due process and a fair trial where a manifest injustice occurred when his conviction was obtained on false sworn testimony requiring a new trial.

II.     Petitioner was denied his Sixth Amendment right to effective assistance as guaranteed by both state and federal constitutions at trial, therefore, he is entitled to a new trial and an evidentiary hearing.

III.    The prosecutor's misconduct violated Petitioner's right to due process of law and a fair trial as guaranteed by both state and federal constitutions requiring reversal.

IV.     The trial court's failure to ascertain on the record whether Petitioner Caraway intelligently and knowingly waived his right to testify requires a new trial.

V.      The trial court's erroneous jury instruction on reasonable doubt deprived Petitioner of his due process right to a properly instructed jury and a fair trial.

VI.     The cumulative effect of the foregoing errors denied Petitioner Caraway of a fair trial in violation of due process of law and requires reversal.

Respondent argues in an answer to the habeas petition that Petitioner's claims lack merit or are procedurally defaulted. To the extent that the claims are procedurally defaulted because of Petitioner's failure to object in the trial court, the procedural default is excused. The Court will address the merits of Petitioner's claims because his claims lack merit and procedural default is not a jurisdictional bar to substantive review of a meritless claim. *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), *cert. denied*, 546 U.S. 1100 (2006); *Hudson v. Jones*, 351 F.3d

212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).

## II.  Standard of Review

Petitioner is not entitled to the writ of habeas corpus unless he can show that the state

court's adjudication of his claims on the merits–

(1) resulted in a decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by the Supreme
Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the
facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court

arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if

the state court decides a case differently than [the Supreme] Court has on a set of materially

indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  A state court's

decision is an "unreasonable application of" clearly established federal law "if the state court

identifies the correct governing legal principle from [the Supreme] Court's decisions but

unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application

of federal law." *Id.* at 410 (emphasis in original).  "[A] federal habeas court making the

'unreasonable application' inquiry should ask whether the state court's application of clearly

established federal law was objectively unreasonable." *Id.* at 409.

"Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it

does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor

the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002)

4

(*per curiam* opinion) (emphasis in original).  Furthermore, section "2254(d) dictates a highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt."  *Bell v. Cone*, 543 U.S. 447, 455 (2005) (quotation marks and citations omitted).  In addition, "state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1)."  *Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004).

## III. Discussion

### A. Lieutenant Pompey's Testimony

Petitioner alleges that he was deprived of his constitutional right to due process and a fair trial when Detective Lieutenant Randall Pompey testified that he found half a kilogram of cocaine in James Cox's house.  According to Petitioner, the jury may have concluded from Pompey's testimony that, if Cox had half a kilogram of cocaine in his home, Petitioner must have bought the other half of the kilogram.  Petitioner contends that the prosecutor had a duty to correct Pompey's testimony and to disclose the correct amount of cocaine discovered in Cox's home.  Petitioner also faults the prosecutor for relying on Pompey's false testimony in her closing argument.

The Michigan Court of Appeals agreed with Petitioner that plain error occurred, because (1) a laboratory report indicated that the cocaine found in James Cox's home weighed 130 grams, not half a kilogram, (2) Lieutenant Pompey's testimony was false, and (3) the prosecutor did not correct the false testimony.  The court of appeals concluded, however, that Pompey's uncorrected statement did not affect the jury's verdict.

Perjury is testifying falsely on a material matter while under oath and with intent to

provide false testimony. *United States v. Dunnigan*, 507 U.S. 87, 94 (1993), *abrogated on other grounds*, *United States v. Wells*, 519 U.S. 482 (1997).

> As long ago as *Mooney v. Holohan*, 294 U.S. 103, 112, 55 S. Ct. 340, 342, 79 l.Ed. 791 (1935), [the Supreme] Court made clear that deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.' This was reaffirmed in *Pyle v. Kansas*, 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214 (1942). In *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), [the Supreme Court] said, '(t)he same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears.' *Id*., at 269, 79 S.Ct., at 1177. Thereafter *Brady v. Maryland*, 373 U.S., at 87, 83 S.Ct., at 1197, held that suppression of material evidence justifies a new trial 'irrespective of the good faith or bad faith of the prosecution.' See American Bar Association, Project on Standards for Criminal Justice, Prosecution Function and the Defense Function § 3.11(a). When the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within this general rule. *Napue*, *supra*, at 269, 79 S.Ct., at 1177. [The Supreme Court does] not, however, automatically require a new trial whenever 'a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict . . . .' *United States v. Keogh*, 391 F.2d 138, 148 (CA2 1968). A finding of materiality of the evidence is required under *Brady*, *supra*, at 87, 83 S.Ct., at 1196, 10 L.Ed.2d 215. A new trial is required if 'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury . . . .' *Napue*, *supra*, at 271, 79 S.Ct., at 1178.

*Giglio v. United States*, 405 U.S. 150, 153-54 (1972). "To prevail on a claim that the government presented perjured testimony, [a defendant] must show '(1) that the statements were actually false; (2) the statements made were material; and (3) [the] prosecution knew they were false.'" *United States v. Pierce*, 62 F.3d 818, 834 (6th Cir. 1995) (quoting *United States v. Farley*, 2 F.3d 645, 655 (6th Cir. 1993)).

A State of Michigan laboratory report confirms that only 130 grams of cocaine were found in James Cox's home. However, the record fails to demonstrate that Lieutenant Pompey intentionally misstated the facts or that the prosecutor knew Pompey's testimony was false. The false statement could have been the result of confusion, mistake, or faulty memory, as opposed

to perjury. *Dunnigan*, 507 U.S. at 94.

Furthermore, Pompey's false statement was not material evidence in light of Petitioner's own admissions that he and Paul Sinclair conducted a drug business together, that they had bought half a kilogram of cocaine from Cox, and that they converted the half kilogram into a whole kilogram. Pompey's testimony also could not have affected the jury's verdict in light of the fact that a large sum of money equivalent to the price of a half kilogram of cocaine was found in Cox's home. Therefore, Petitioner is not entitled to relief on the basis of his claim that the prosecutor relied on perjured testimony to obtain Petitioner's conviction.

### B. Trial Counsel

Petitioner alleges that he was denied his Sixth Amendment right to effective assistance of counsel and is entitled to an evidentiary hearing and a new trial. The Michigan Court of Appeals adjudicated this claim on the merits and concluded that Petitioner had failed to demonstrate that he received ineffective assistance of counsel.

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that his attorney's "performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington,* 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

"Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. Because of the difficulties inherent in evaluating defense counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. The defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

### 1. Failure to Correct Lieutenant Pompey's Testimony

Petitioner contends that his trial attorney failed to investigate and challenge the prosecution's false evidence that Lieutenant Pompey found half a kilogram of cocaine during a search of James Cox's home. (Tr. June 26, 2002, at 8.) Petitioner claims that he was prejudiced by the testimony in that it corroborated his own incriminating statement that he bought half a kilogram of cocaine from Cox. Petitioner contends that his attorney possessed discovery materials, which indicated that Lieutenant Pompey seized only 130 grams of cocaine and not half a kilogram.

Even if defense counsel had pointed out the error in Pompey's testimony, the fact remained that approximately $15,000 was found in Cox's home, and Pompey testified that half a kilogram of cocaine cost $10,000 to $15,000. *Id*. at 9. Thus, there was other evidence besides Pompey's inaccurate statement to corroborate Petitioner's statement to the police that he and Sinclair bought half a kilogram of cocaine from Cox. The Court concludes that defense counsel's allegedly deficient performance did not prejudice the defense.

## 2. Failure to Suppress Petitioner's Statements to the Police

Petitioner alleges that his attorney should have filed a pretrial motion to suppress Petitioner's incriminating statements to Lieutenant Pompey during his post-arrest interview.

### a. The Advice of Rights

Petitioner claims that his admissions to Lieutenant Pompey were inadmissible because Pompey's advice of constitutional rights was defective. The Michigan Court of Appeals determined that the record did not support Petitioner's claim that Pompey failed to accurately and adequately apprise him of his rights.

The Supreme Court has stated that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id.* at 444.

Lieutenant Pompey testified at trial that he advised Petitioner of his constitutional rights before questioning him. When the prosecutor asked Pompey about the nature and content of those rights, Pompey stated:

> I basically told him, and I say the same thing every time, "You have the right to remain silent, which means you don't have to talk to me at all. You have the right to have an attorney. If you cannot afford one, the . . . Court will appoint one for you. If you waive your right to talk to me and later change your mind, just tell me and I'll stop asking questions. If you waive [your right] to have your attorney present and you later change your mind, I'll stop asking questions until you talk with the . . . attorney. . . ."

(Tr. June 25, 2002, at 101.) Petitioner claims on the basis of this testimony that Pompey failed to advise him that his statements could be used against him in a court of law and that he had a right to an attorney before and during questioning.

The testimony quoted above was a summary of what Lieutenant Pompey said to Petitioner. Pompey did not say that his testimony constituted the actual words he used during the interview. This is clear from the phrase, "I basically told him . . . ." In other words, Pompey was testifying about the essence of his advice to Petitioner concerning his constitutional rights. Defense counsel was not remiss for failing to attempt to suppress Petitioner's statement on the ground that the recitation of constitutional rights was defective.

### b. Waiver of Rights

Petitioner asserts that the environment during the interview was coercive and resulted in an unknowing and involuntary statement. The Michigan Court of Appeals concluded on review of this claim that the record did not support Petitioner's claim that his confession was involuntary.

Although "[n]o single litmus-paper test for constitutionally impermissible interrogation has been evolved," *Culombe v. Connecticut*, 367 U.S. 568, 601 (1961), "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). The ultimate test is whether the confession is "the product of an essentially free and unconstrained choice by its maker." *Culombe*, 367 U.S. at 602. "A statement is not 'compelled' within the meaning of the Fifth Amendment if an individual 'voluntarily, knowingly and intelligently' waives his constitutional privilege." *Colorado v. Spring*, 479 U.S. 564, 573 (1987)

(quoting *Miranda*, 384 U.S. at 444). Courts look to the totality of the circumstances to determine whether a suspect's will was overborne and resulted in an involuntary confession. *Ledbetter v. Edwards*, 35 F.3d 1062, 1067 (6th Cir. 1994).

Lieutenant Pompey testified that he advised Petitioner of his constitutional rights and explained the entire investigation to Petitioner during their interview. Petitioner indicated that he understood his rights and that he would waive his rights and talk with Pompey. According to Pompey, Petitioner initially was cooperative, and the interview began very cordially. Petitioner told Pompey that he knew Paul Sinclair and that they had talked about getting into the drug business. Petitioner explained to Pompey that, with Sinclair's money and Petitioner's connections, he figured they could make money. Petitioner subsequently asked Pompey about working out a deal with the police. When Pompey responded that he did not have the authority to work out a deal, Petitioner began to provide misleading information about where and how the cocaine was manufactured. Pompey then terminated the interview.

Pompey testified that the interview was more like a conversation than an interview and that the atmosphere was very calm. Although the interview took place in temporary police quarters, Petitioner was not handcuffed. (Tr. June 25, 2002, at 99-04.)

Sergeant David Draper of the Battle Creek Police Department also was present during the interview. He testified at trial that Petitioner waived his constitutional rights and was cooperative until he learned that he could not get a deal. The interview ended shortly afterward because Petitioner became evasive. Draper thought that the interview lasted less than thirty minutes. He stated that his own demeanor during the interview had been friendly and that Lieutenant Pompey had acted professionally. (Tr. June 26, 2002, at 155-60.) Because the record

does not support Petitioner's allegation that his confession was coerced, defense counsel was not ineffective for failing to move to suppress Petitioner's statements.

### c. Failure to Record the Interview

Petitioner alleges that his attorney could have moved to suppress his statements to the police on the basis of the officers' failure to record the interview. The Supreme Court has not held that criminal suspects have a constitutional right to an electronic recording of interrogations, *Crenshaw v. Renico*, 261 F. Supp. 2d 826, 837 (E.D. Mich. 2003), and, the Michigan Court of Appeals has stated that the failure to electronically record a police interrogation does not violate a defendant's right to due process under the Michigan Constitution. *People v. Fike*, 228 Mich. App. 178, 183-86; 577 N.W.2d 903, 906-07 (1998). This is particularly true where, as here, there has been no showing that the recording would have benefitted the defense. *Id.*, 228 Mich. App. at 186; 577 N.W.2d at 907. Therefore, defense counsel was not ineffective for failing to move to suppress Petitioner's statement to the police.

### 3. Failure to Make Motions in Limine

Petitioner alleges next that his attorney was ineffective for failing to attempt to suppress details about the execution of search warrants at the homes of Paul Sinclair, Sinclair's father, and Michael Cox. The jurors apparently saw photographs of marijuana, cocaine, money, and scales seized at those locations, and they heard testimony from the officers who participated in the searches. According to Petitioner, evidence of this illegal drug activity depicted him as a bad man.

Evidence derived from the searches was relevant to show that Petitioner had a source for cocaine and that Sinclair was actively involved in a drug enterprise. Consequently, defense

counsel in all probability would have been unsuccessful in attempting to suppress the evidence. Petitioner has failed to show that his attorney's performance prejudiced the defense.

### 4. Failure to Object to Testimony about Prior Contact

Petitioner contends that his attorney should have objected to Officer David Draper's testimony that Draper had prior contacts with Petitioner. Petitioner asserts that this information confirmed his history of involvement with drugs and gave the appearance that he was a bad man.

Draper testified that he knew Petitioner and that he had worked with him previously. (Tr. June 26, 2002, at 154, 160-61.) Despite Petitioner's allegation to the contrary, defense counsel did object to the remarks. (*Id*. at 162.) Thus, there is no basis in fact for Petitioner's allegation.

### 5. Failure to Object to Opinion Testimony

Petitioner asserts that Lieutenant Pompey gave improper opinion testimony on how cocaine is sold and on the amount of cocaine that is indicative of a dealer's amount. Pompey explained, however, that he had attended drug schools, that he had been involved in drug enforcement for five years, and that he had participated in over one thousand narcotics investigations. Based on Pompey's background, the trial court certified Pompey as an expert in drug manufacturing and delivery. (Tr. June 25, 2002, at 79-81; Tr. June 27, 2002, at 81.) Defense counsel was not ineffective for failing to object to Pompey's opinion testimony, because Pompey clearly was qualified to express an opinion on how cocaine is sold and how much cocaine is indicative of a dealer's amount.

### 6. Failure to Object to Testimony that Sinclair was a Drug Dealer

Petitioner claims that his attorney should have objected when Lieutenant Pompey testified that he received information about Paul Sinclair "touting himself as a[n] up and coming

drug dealer." (Tr. June 25, 2002, at 88.) The comment was an appropriate response to the prosecutor's question about how Pompey became aware of Sinclair. The comment said nothing about Petitioner; in fact, it supported the defense theory that Sinclair, not Petitioner, was the real drug dealer in the case. Defense counsel's failure to object did not amount to deficient performance.

### 7. Failure to Object to the Prosecutor's Comments

Petitioner claims that his attorney should have objected to the prosecutor's improper remarks during *voir dire* and closing arguments. The Court has determined below that, with one exception, the prosecutor's comments were proper. The exception involved a comment about Petitioner being a major drug dealer. Although defense counsel did not object to that comment, she subsequently made the argument that there was no concrete evidence connecting Petitioner to the cocaine delivery on September 13, 2001. This was an appropriate response and as effective as any objection would have been. Petitioner has not overcome the presumption that defense counsel's failure to object was a matter of trial strategy.

### 8. The Defense Theory

Petitioner asserts that defense counsel used an unsound defense that he was impoverished and not a major drug dealer. Petitioner maintains that this defense opened the door for devastating rebuttal testimony that Petitioner had lots of money and bought expensive gifts for his girlfriend.

Defense counsel countered the rebuttal testimony by pointing out that Petitioner and others relied on Paul Sinclair for money. Petitioner has not alleged another defense that his attorney could have used, and, as the state court recognized, the fact that the defense backfired

14

does not compel the conclusion that counsel was ineffective. A legitimate trial strategy went awry. Had defense counsel failed to present any defense, she would have been ineffective. *Groseclose v. Bell,* 130 F.3d 1161, 1169-71 (6th Cir.1997). Given the strength of the evidence against Petitioner, and Petitioner's failure to set forth a viable defense that defense counsel could have used, the Court declines to find counsel's representation of Petitioner ineffective.

### 9. Interference with the Right to Testify

Petitioner states that he wanted to testify at trial and that his attorney failed to alert him that the decision whether to testify was his to make and not defense counsel's. The trial court arguably placed Petitioner on notice that the decision to testify or not was his to make. The court stated on the first day of trial that, if the defendant chose not to testify, the jury could not hold his silence against him. (Tr. June 25, 2002, at 13.) Furthermore, Petitioner is presumed to have waived the right to testify, because he failed to alert the trial court that he wanted to testify or that he disagreed with his attorney's decision about whether he should testify. *United States v. Bass*, 460 F.3d 830, 839 (6th Cir. 2006), *cert. denied*, __ U.S. __, 127 S. Ct. 2959 (2007); *Gonzalez v. Elo*, 233 F.3d 348, 356-57 (6th Cir. 2000); *United States v. Webber*, 208 F.3d 545, 551 (6th Cir. 2000).

### C. The Prosecutor

Petitioner asserts that the prosecutor committed misconduct during *voir dire*, during her opening statement, and during closing arguments. The Michigan Court of Appeals determined that Petitioner did not preserve this claim for appellate review by objecting at trial and that the claims lacked merit.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review."

*Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004). Petitioner must demonstrate that the

prosecutor's conduct violated a specific constitutional right or infected the trial with such

unfairness as to make the resulting conviction a denial of due process. *Donnelly v.*

*DeChristoforo*, 416 U.S. 637, 643 (1974). It is not enough to show that the prosecutor's conduct

or remarks were undesirable or even universally condemned. *Darden v. Wainwright*, 477 U.S.

168, 181 (1986). On habeas review, the complained-of conduct must be both improper and

flagrant, *Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir. 2006), *cert. denied*, __ U.S. __, 127 S.

Ct. 1376 (2007), and "'so egregious as to render the entire trial fundamentally unfair.'" *Pritchett*

*v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Cook v. Bordenkircher*, 602 F.2d 117, 119

(6th Cir. 1979)). Four factors to be used for determining whether remarks were flagrant are:

(1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused.

*United States v. Carroll*, 26 F.3d 1380, 1385 (6th Cir. 1994).

### 1. Advancing the Prosecution Theory

During *voir dire* the prosecutor explained to the prospective jurors that Petitioner was

charged as an aider and abettor. She then explained the concept of aiding and abetting and asked

several jurors whether they would have trouble convicting someone as an aider or abettor.

Petitioner contends that these comments were an improper means of advancing the prosecution's

theory. The Court disagrees. The prosecutor's questions were designed to elicit any bias or

misunderstanding on a fundamental aspect of her case. This was proper conduct.

## 2.  Instructing on Reasonable Doubt

Petitioner alleges that the prosecutor improperly instructed prospective jurors on her burden of proof and on the concept of "reasonable doubt."  The prosecutor said:

> My burden is not beyond all doubt or beyond a shadow of a doubt.  So to hold me to that would not be following the judge's instructions.  You can have some doubt and still convict because, as I said, my burden is not a hundred percent, it's not beyond all doubt.  It's beyond a reasonable doubt.

(Tr. June 25, 2002, at 21.)  Although these remarks were substantially different from the standard criminal jury instruction in Michigan, technically, they were not incorrect.  Even if the prosecutor did imply that the burden of proving guilt was a low standard, the trial court had already read the standard jury instruction on reasonable doubt to the jury, and the court repeated the standard instruction at the close of the case.  The trial court also instructed the jurors to follow its instructions on the law even if an attorney said something different about the law.  Jurors are presumed to follow their instructions.  *Richardson v. Marsh,* 481 U.S. 200, 206 (1987).  Therefore, the prosecutor's explanation of reasonable doubt could not have misled the jurors or prejudiced the defense.

## 3.  Vouching and Bolstering

Petitioner alleges that the prosecutor vouched for witnesses and bolstered her own witnesses' testimony during her opening statement.  The record indicates that the prosecutor described what she expected the evidence to be and then said, "That's what happened" or "That's what they did."  (Tr. June 25, 2002, at 72-73, 75.)  At no point did the prosecutor indicate a personal belief in her witnesses' testimony or imply that she knew something the jurors did not know.  *Cf. United States v. Francis*, 170 F.3d 546, 550-51 (6th Cir. 1999)

17

(explaining that "[i]mproper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility" and that "[b]olstering occurs when the prosecutor implies that the witness's testimony is corroborated by evidence known to the government but not known to the jury"). At worst, the prosecutor indicated that an actual delivery of cocaine occurred and that Petitioner facilitated the delivery. That was her theory of the case, and because the subsequent testimony of prosecution witnesses supported the theory, it cannot be said that the prosecutor misstated the facts or relied on facts not in evidence.

### 4. Calling Petitioner a Major Drug Dealer

The prosecutor stated in her closing argument that Petitioner was a major drug dealer. (Tr. June 27, 2002, at 53.) Prosecutors may not interject their personal beliefs in the presentation of their cases. *See United States v. Young*, 470 U.S. 1, 8-9 (1985). However, the context of the prosecutor's comment indicates that she based her remark on the evidence, including Petitioner's statement to the police, the money and cocaine found at James Cox's home, and the testimony of prosecution witnesses. The comment could not have misled the jurors, given Petitioner's own admissions that he and Paul Sinclair jointly started a drug business, bought half a kilogram of cocaine, and altered the cocaine to make it appear more valuable.

Furthermore, the trial court instructed the jurors before opening statements and after closing arguments that the attorneys' arguments were not evidence, but were meant to help the jurors understand the parties' theories. The trial court also cautioned the jury to accept the attorneys' remarks only if they were supported by the evidence or the jurors' own common sense and general knowledge. (Tr. June 25, 2002, at 63; Tr. June 27, 2002, at 76.)

To summarize, the prosecutor's comments were not improper for the most part. Calling

Petitioner a major drug dealer was improper, but the comment was not flagrant misconduct, given Petitioner's admissions to Lieutenant Pompey.  Overall, the alleged prosecutorial misconduct was not so egregious as to render Petitioner's trial fundamentally unfair.

### D.  The Right to Testify

Petitioner faults the trial court for failing to ascertain on the record whether he intelligently and knowingly waived his right to testify.  The Michigan Court of Appeals reviewed this claim and concluded that trial courts have no duty to ascertain on the record whether a defendant has intelligently and knowingly waived his right to testify.

This Court agrees.  Petitioner possessed a constitutional right to testify, *Rock v. Arkansas*, 483 U.S. 44, 51-53 (1987), but "[t]he trial court has no duty to advise the defendant of his right to testify, nor is the court required to ensure that an on-the-record waiver has occurred.  Rather, if the defendant wants to testify, he can reject his attorney's tactical decision by insisting on testifying, speaking to the court, or discharging his lawyer."  *United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993) (citations and quotation marks omitted); *see also Webber*, 208 F.3d at 551.   Petitioner's claim has no merit.

### E.  The Jury Instructions

Petitioner alleges that the trial court's jury instruction on reasonable doubt deprived him of his constitutional right to a properly instructed jury and to a fair trial.  Petitioner asserts that the instruction should have required proof of guilt to a "moral certainty" and should have stated that a reasonable doubt is one which causes one to hesitate about an important decision in his or her life.

The Michigan Court of Appeals reviewed Petitioner's claim for "plain error" because he did not object to the instruction at trial. The court of appeals concluded that the trial court's use of the standard jury instruction was not plain error requiring reversal.

The question on habeas review of a jury instruction is not whether the instruction was "undesirable, erroneous, or even 'universally condemned.'" *Cupp v. Naughten*, 414 U.S. 141, 146 (1973). Instead, before a federal court may overturn a state conviction, the instruction must have violated "some right which was guaranteed to the defendant by the Fourteenth Amendment" or the ailing instruction by itself must have "so infected the entire trial that the resulting conviction violates due process." *Id*. at 146-47.

"[S]o long as the court instructs the jury on the necessity that the defendant's guilt be proven beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. Rather, 'taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury.'" *Victor v. Nebraska*, 511 U.S. 1, 5 (1994) )(citations omitted) (alterations in original). An instruction is unconstitutional if it equates reasonable doubt to "a grave uncertainty," "an actual substantial doubt," or "a moral certainty." *Id*. (quoting *Cage v. Louisiana*, 498 U.S. 39 (1990)).

Petitioner's jury was instructed that reasonable doubt is:

a fair and honest doubt growing out of the evidence or lack of evidence. It is not merely an imaginary doubt, it is not a possible doubt, but it's a doubt that's based on reason and common sense.

So a reasonable doubt is just that. It's a doubt that's reasonable after a careful and considered examination of all the facts and circumstances surrounding the case.

(Tr. June 27, 2002, at 75.)

The language found unconstitutional in *Cage* is not present in this instruction. Moreover, the United States Court of Appeals for the Sixth Circuit has upheld the constitutionality of the instruction used at Petitioner's trial and determined that the instruction does not lower the government's burden of proof. *See Binder v. Stegall*, 198 F.3d 177, 178-79 (6th Cir. 1999). Petitioner's claim has no merit.

### F. Cumulative Effect

The sixth and final habeas claim alleges that the cumulative effect of the foregoing errors (use of false testimony, ineffective assistance of trial counsel, prosecutorial misconduct, and an unconstitutional jury instruction) deprived Petitioner of a fair trial. Petitioner asserts that the errors amounted to structural error and were not harmless.

The Michigan Court of Appeals found no errors of consequence that cumulatively deprived Petitioner of a fair trial, and "[t]he Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002). Therefore, it cannot be said that the state court's adjudication of Petitioner's claim was contrary to any Supreme Court decision so as to warrant habeas relief under 28 U.S.C. § 2254(d). *Id.* In other words, constitutional errors that would not individually support habeas relief simply cannot be cumulated to support habeas relief. *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005), *cert. denied*, __ U.S. __, 127 S. Ct. 557 (2006).

## IV. Conclusion

The state appellate court's decision did not result in an unreasonable determination of the

facts, and it was not contrary to, or an unreasonable application of, Supreme Court precedent.

Accordingly, the petition for a writ of habeas corpus [Doc. 1, Dec. 20, 2005] is DENIED.


s/Marianne O. Battani
MARIANNE O. BATTANI

UNITED STATES DISTRICT JUDGE


Dated: 2/27/08